Robert E. HICKS, as Trustee of North American Acceptance Corporation, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, and Dr. Ernest L. Boyer, U. S. Commissioner of Education, Defendants.

Civ. A. No. C76–791A.

United States District Court, N. D. Georgia, Atlanta Division.

June 27, 1977.

Hicks, Maloof & Campbell, Atlanta, Ga., for plaintiff.

John W. Stokes, Jr., U. S. Atty., Julian M. Longley, Jr., Asst. U. S. Atty., Carl H. Harper, Regional Atty., U. S. Dept. of Health, Education and Welfare, Steven J. Edelstein, Alvin N. Jaffe, Asst. Regional Attys., Atlanta, Ga., for defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT BY PLAINTIFF AND DEFENDANT

HOOPER, Senior District Judge.

### I. STATEMENT OF THE CASE

Plaintiff, as Trustee in Bankruptcy for North American Acceptance Corporation, filed a complaint on May 4, 1976 which was amended on November 3, 1976. Said complaint in Three Counts alleged that a contract of insurance existed between North American Acceptance Corporation and the defendants covering certain student loans, and that as a result of default by the borrowers of those loans plaintiff is entitled to Judgment against the United States in the amount of $279,264.31.[1] Defendants, the Secretary of Health, Education and Welfare, and the Commissioner of Education answered the same on December 20, 1976 after certain motions to dismiss had been denied by the Court.

The instant suit arose with respect to defendants' federal program of low interest insured loans to students in institutions of higher education pursuant to 20 U.S.C. § 1071, et seq.

In Count One plaintiff alleges the theory of estoppel against the government on the ground that the defendants knew, approved, and accepted the policy of disbursement before stamping "federally insured."

In Count Two plaintiff alleges that the issuance of insurance took place as of July 12, 1971 pursuant to "contract of insurance" signed on that date.

Count Three alleges that the conduct of defendants' agents constitutes an express waiver of the regulation contained in 45 C.F.R. 177.42(b) which provides

. . . . unless expressly provided for, no disbursements made on a loan prior to the issuance of insurance shall be covered.

From this record the Court finds the following to be a correct statement of facts without dispute.

1. This Court has subject matter jurisdiction, personal jurisdiction and venue over this case and these defendants.

2. The defendants have sponsored a federal program of low interest insured loans to students in institutions of higher education pursuant to 20 U.S.C. § 1071, et seq.

3. The defendants have promulgated regulations for the purposes of implementing said legislation, said regulations being found in 45 C.F.R. Part 177.

---

1. Plaintiff's complaint also seeks a declaratory judgment on the issue of whether or not disbursement of funds prior to the date of the "federally insured" stamp is improper.

4. Between September 1971 and September 1973, North American Acceptance Corporation was an "eligible lender" as defined in 20 U.S.C. § 1085(g) and 45 C.F.R. § 177.1(h).

5. North American Acceptance Corporation and the Office of Education of the Department of Health, Education and Welfare entered into a "Contract of Insurance" dated July 12, 1971.

6. North American Acceptance Corporation between September, 1971 and September, 1973 lent money to individuals enrolled or about to be enrolled at Blayton Business College of Atlanta, Georgia. Among those were the 95 individuals whose loans are the subject of this lawsuit.

7. Some students to whom money was lent by North American Acceptance Corporation who attended Blayton Business College are in default of their loans. Among those students are the 95 students whose loans are the subject of this lawsuit.

8. North American Acceptance Corporation has made claims to the Office of Education of the Department of Health, Education and Welfare on 95 loans aggregating $246,280.28 which have been denied by the Office of Education of the Department of Health, Education and Welfare on the grounds that disbursements were made prior to the date of insurance issuance.

9. The disbursements to each of the borrowers were made prior to the dates on which[2] were stamped "federally insured" by agents of the defendants.

10. All of the defaulted 95 loans sought to be collected in this action were made by North American Acceptance Corporation between September 1971 and September 1973.

11. In addition to the claims based on the 95 loans now in default, the defendants have set off against approved claims interest and special allowance paid off by the defendants on those 95 claims amounting to $32,984.03.

## II. GROUNDS ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff has moved the Court for summary judgment with respect to Count Two of his complaint, and alleges that the execution of a contract of insurance between the Office of Education and N.A.A.C. dated July 12, 1971 constitutes as a matter of law, the "issuance of insurance"; and, therefore, since the funds in question were disbursed in September, 1971, or thereafter, there was no violation of 45 C.F.R. § 177.42(b).

Defendants opposed plaintiff's motion for summary judgment and in addition filed a cross-motion for summary judgment alleging the following: (1) That 45 C.F.R. 177.-42(b) was violated by the plaintiff in that disbursement occurred before issuance of insurance, and (2) that the issuance of insurance occurred when each particular borrower's application was stamped "federally insured" and not when the contract of insurance dated July 12, 1971 was executed, (3) that with respect to plaintiff's allegations in Count One of the complaint, estoppel could not be had against the government because it was acting in its sovereign capacity, and because agents of the defendants had no authority to waive the regulation in question, and (4) the Commissioner never "expressly provided for" a waiver of the regulation in dispute.

## III. THE ISSUANCE OF INSURANCE

Plaintiff alleges that the date of the issuance of insurance was July 12, 1971, and that, therefore 45 C.F.R. § 177.42(b) was not violated. Said contract of insurance reads as follows:

WHEREAS *North American Acceptance Corporation*, (Atlanta, Georgia), hereinafter referred to as the 'lender' wishes to be able to secure Federal loan insurance on loans made to students pursuing programs of higher education pursuant to Title IV Part B of the Higher Education Act of 1965 and,

WHEREAS the U. S. Commissioner of Education, hereinafter referred to as the

2. The applications.

'Commissioner', having found that the Lender qualifies as an eligible lender under the provisions of such Act wishes to encourage the making of such loans by the Lender.

NOW THEREFORE, it is agreed that: 1. Within such limits as may be set by him, the Commissioner shall insure all loans made by the Lender which are eligible for such insurance under such Act and the Regulations issued thereunder, which Act and Regulations as they may from time to time be amended, are made a part of this contract.

2. In making loans available to eligible students, the Lender undertakes to assist them in securing such reductions in their obligations to pay interest on loans made by the Lender as they may be eligible to receive under such Act and Regulations.

3. The Lender shall not sell or otherwise transfer loans insured under this Contract of Insurance at discount, or (except for interest and insurance charges) pass any of the costs of making loans which are to be insured under the provisions of the Act on to the borrower (in the form of higher tuition charges or otherwise), except under such unusual circumstances as may be approved by the Commissioner.

4. If the Lender no longer intends to make loans insured under this Contract, he shall so notify the Commissioner and this Contract shall be terminated. This Contract may also be terminated by the Commissioner in a manner provided for by Regulation. The termination of this Contract shall not effect the coverage of loans under certificates of insurance issued prior to such termination.

Three theories in support of this contention are asserted:

1—That the "contract of insurance" dated July 12, 1971 constituted a comprehensive commitment pursuant to 20 U.S.C. § 1079(b)(1). The Court rejects this contention and holds that the "contract of insurance" was not a certificate of comprehensive insurance since it did not insure all loans by the lender up to a specific amount during a specific period of time.

2—Alternatively, plaintiff asserts that the "contract of insurance" was a contract for the issuance of insurance for all proposed loans pursuant to 20 U.S.C. § 1079(a)(2). The Court also rejects this contention, as a careful reading of the contract will show it does not come within the provisions of § (a)(2) in regard to proposed loans or proposed lines of credit.

On the other hand, the Court accepts the argument of defendant that "federal loan insurance in the overwhelming majority of cases is conferred on an individual, loan by loan, basis. A lender will submit separate student loan applications and supporting documents to O.E. If the lender is eligible and the loan insurable (both conditions need be met), O.E. will at this time insure the loan."

"In lieu of issuing separate 'certificates' 20 U.S.C. § 1079(a) covering each loan (obviously a burdensome task), O.E. manifests its approval by stamping the loan application in the upper right hand corner. The stamp, a programmatic adaptation sanctioned by the regulations is virtually synonymous in intent and effect with the 'certificate' mentioned in the statute.[3]"

In connection with the same, the regulation under consideration by the Court states the following:

(b) Each eligible lender with which the Commissioner has entered into an agreement pursuant to paragraph (a) of this section may make application to the Commissioner for Federal loan insurance in connection with each application for a loan which the lender has initially determined to be eligible for such insurance coverage. Upon receipt of such application, which shall be filed on such form and in such manner as may be determined by the Commissioner, the Commissioner shall determine whether or not the

---

3. See defendants' memorandum supporting Motion to Reconsider, pages 3 and 4, dated November 17, 1976.

loan is insurable and if the loan is determined to be insurable, the Commissioner shall, by affixing to the application evidence thereof, advise the lender that the loan is insurable and the amount of insurance. The insurance shall extend to all disbursements made pursuant to the loan, except that unless expressly provided for, no disbursements made on a loan prior to the issuance of insurance shall be covered. 45 C.F.R. § 177.42(b).

■ Therefore, the Court denies the contention that the "contract of insurance" was issued on July 12, 1971 for all proposed loans in the future, but on the other hand, finds that the "contract of insurance" was merely an agreement between N.A.A.C. and O.E. recognizing that (a) N.A.A.C. was an eligible lender under the Act and that (b) if, in the future the Commissioner of Education should approve and issue insurance for any particular loan application submitted by N.A.A.C., N.A.A.C. will abide by all appropriate rules and regulations, including 45 C.F.R. § 177.42(b).

■ The third theory which plaintiff asserts under Count Two is that the "contract of insurance" was a contract "for all loans made thereunder", and that the stamping of "federally insured" by the government was at most a condition subsequent. A careful reading of the last sentence of 45 C.F.R. § 177.42(b) (quoted above) indicates clearly that the issuance of insurance (which this Court has determined as a matter of law to occur when the stamp "federally insured" is placed on the application) is a condition precedent to the coverage of any disbursements by the insurance issued by affixing of said stamp. Therefore, this Court denies plaintiff's third contention with respect to Count Two of his amended complaint.

WHEREFORE, this Court holds that "the contract of insurance" dated July 12, 1971 was not the issuance of insurance, that the issuance of insurance occurred as each particular application was stamped "federally insured", and that, furthermore 45 C.F.R. § 177.42(b) was violated by N.A.A.C.'s prior disbursements on the 95 loans in question. Therefore plaintiff's Motion for Summary Judgment on Count Two of his complaint as amended is hereby DENIED.

## IV.  ISSUE OF ESTOPPEL AGAINST THE GOVERNMENT

Plaintiff argues in Count One of his complaint

> That the policy of disbursing money prior to the stamping of the application as 'federally insured' was known generally to agents of the Defendants and approved and accepted by them, thereby waiving the alleged 'insurance issuance before disbursement' requirement; and further that the Defendants should now be estopped from asserting the alleged 'insurance issuance before disbursement requirement.'

■ It is a generally recognized principle of law that estoppel cannot operate against the United States if the government is acting in its sovereign as opposed to its proprietary capacity. While the Court could cite innumerable cases to illustrate this rule of law, the following examples are sufficient.

In the case of *Federal Crop Insurance Corporation v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947) the United States Supreme Court denied relief to plaintiff, a producer of wheat, who brought the action against a government-owned corporation which had allegedly insured plaintiff's wheat crop against certain losses. The Federal Register regulation (concerning the Federal Crop Insurance Act) made ineligible for insurance "spring wheat which has been reseeded on winter wheat acreage." Without actual knowledge of this regulation, plaintiff applied to defendant corporation's local agent for insurance on his wheat crop, told said agent that most of the crop was being reseeded on winter wheat acreage, but did not include such information in his written application. Although the government corporation had accepted the plaintiff's application, when reseeded acreage was subsequently destroyed by drought giving rise to the suit against the government corporation, the United States Su-

preme Court held that the government was not liable for the loss because of the binding nature of the agency's published regulation which had been violated by the plaintiff. In denying relief the United States Supreme Court stated the following:

> The case no doubt presents phases of hardship. We take for granted that, on the basis of what they were told by the Corporation's local agent, the respondents reasonably believed that their entire crop was covered by petitioner's insurance. And so, we assume that recovery could be had against a private insurance company. But the Corporation is not a private insurance company. It is too late in the day to urge that the government is just another private litigant, for purposes of charging it with liability, whenever it takes over a business theretofore conducted by private enterprise or engages in competition with private ventures.

At this juncture in the Supreme Court's opinion the following footnote appears and analogously is highly relevant to the facts in the instant suit:

> 1. Judging from the legislative history of the Act, the Government engaged in crop insurance as a pioneer. Private insurance companies apparently deemed all-risk crop insurance too great a commercial hazard. See Report and Recommendations of the President's Committee on Crop Insurance, H.Doc. No. 150, 75th Cong., 1st Sess., pp. 2–4, 11–12, H.R.Rep. No. 1479, 75th Cong. 1st Sess., p. 2; 81 Cong.Rec. 2866, 2867, 2887, 2891, 2893, 2895; Hearings before a Subcommittee of the Senate Committee on Agriculture and Forestry on S. 1397, 75th Cong., 1st Sess., 125, 185. But this does not affect the legal issues. It merely underscores the fact that the undertaking by the Government is not an ordinary commercial undertaking, and thereby reenforces the conclusion that the rules of law whereby private insurance companies are rendered liable for the acts of their agents are not bodily applicable to a Government agency like the Corporation, unless Congress has so provided.

Similarly in the case at bar, the government is acting in its sovereign capacity to confer a benefit upon the public and satisfy a well-recognized public need as opposed to acting as an ordinary citizen for a private insurance company. The legislative history of the 1965 Higher Education Act discloses that

> It is well known that the financial burdens families now face, if they are to provide education for their children, are becoming increasingly heavy . . . The program proposed should make long-term credit for educational purposes available to every qualified college student in the Nation . . . The central objective of part B of title IV is to make loan insurance available to any college student who needs to borrow. *1965 U. S. Code Congressional and Administrative News*, pages 4059 to 4062.

An examination of the legislative history herein referred to (the details of which need not be discussed here) reveals ostensibly the sovereign nature of the government's function in providing insurance for loans to students for the purpose of higher education.

In the case of *Moody Nursing Home, Inc. v. David Matthews, Secretary of Health, Education and Welfare*, (No. C75–72, Northern District of Georgia, Atlanta Division, Jan. 10, 1977, Judge Freeman) the court restated the principle

> The touchstone of whether the government is acting in its proprietary capacity or sovereign capacity is whether the government is entering into ordinary contractual relations with its citizens or whether it is seeking to enforce a public right or interest. In the latter instance the government is acting in its sovereign capacity, *U. S. v. State of Florida, Supra*, [5 Cir.] 482 F.2d at [205] 209; *U. S. v. Brady, Supra*, [D.C.] 385 F.Supp. [D.C.] at 1351, and would in most instances, be immune from the application of estoppel principles.

Considering both the huge sums of money set aside under the Higher Education Act to insure student loans and the clearly stated public purpose for the same, this Court in applying the standard enunciated in the cases above, for determining sovereign ver-

sus proprietary capacity, is required to hold that the facts of the instant case can reflect none other than the government's acting in its sovereign capacity to provide a public benefit. Therefore, the defendants, having been deemed to have acted in their sovereign capacity, as a matter of law cannot be estopped by the acts of their agents.[4]

## V. NO EXPRESS WAIVER OF THE REGULATION

Plaintiff contends in Count Three of his complaint as amended that the words "unless expressly provided for" contained in 45 C.F.R. § 177.42(b) allow for the Commissioner to waive the regulation found to be violated in the instant case. Furthermore, "plaintiff contends that the individual and collective actions of the defendants and their agents constituted such an express exception."

This Court rules that the language in the regulation, to-wit, "unless expressly provided for" is not satisfied by proof of conduct upon the part of the Commissioner or his agents from which it might be reasonably assumed that a waiver was made. On the other hand, only an express statement by the Commissioner that the regulation is being waived would satisfy the language "unless expressly provided for." However, plaintiff has not alleged either in his complaint as amended, or in his motion for summary judgment, or in his opposition to defendants' motion for summary judgment, that the Commissioner expressly made such statement. On the other hand, plaintiff contends that the *conduct* of "the defendants and their agents" satisfies the language "unless expressly provided for."

The Court disagrees with this contention. In the first place, as a matter of law conduct cannot be substituted for the regulation's requirement of an express waiver. Secondly, plaintiff has never asserted or argued that the Commissioner made such express statement. Thirdly, affidavits by Kenneth A. Kohl, Associate Commissioner,

Office of Guaranteed Student Loans (Nov. 9, 1976) and Edwin B. Parker, III, Acting Associate Commissioner of Education, Office of Guaranteed Student Loans (Apr. 21, 1977) show that the Commissioner of Education has never delegated his authority to waive statutory or regulatory requirements to subordinate employees of the Office of Guaranteed Student Loans. Plaintiff has not submitted to this Court any sworn affidavits or evidence to rebut the above mentioned affidavits.

It appears to this Court that in the instant case there is no genuine issue of material fact and that defendants are entitled to Judgment as a matter of law.

WHEREFORE plaintiff's motion for Summary Judgment is denied, and defendants' prayers for Summary Judgment are GRANTED. The Clerk is hereby directed to enter Judgment in favor of the defendants, dismissing this action.

---

4. Therefore the issue of whether or not defendants' agents were acting within the scope of their authority (if they did in fact approve of plaintiff's policy of "prior disbursement") need

not be resolved by this Court since the government as a matter of law was acting in its sovereign capacity.